# United States Court of Federal Claims

No. 10-375 C
Filed Under Seal: October 21, 2010
Reissued: November 3, 2010[*]

| | |
|---|---|
| **Linc Government Services, LLC,** | |
| *Plaintiff*, | Bid Protest; Supplementing the Administrative Record; FRE 901 |
| **v.** | |
| **United States of America,** | |
| *Defendant*, and | |
| **McNeil Technologies Inc.,** | |
| *Intervenor.* | |

*John C. Dulske*, *Joan Kelly Fowler Gluys*, The Law Offices of Dulske & Gluys, P.C., San Antonio, TX, for plaintiff.

*William J. Grimaldi*, *Tina Marie Pixler*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

*David S. Cohen*, *John J. O'Brien*, *William J. Bainbridge*, Cohen Mohr, LLP, Washington, DC, for intervenor.

## OPINION and ORDER

**BLOCK,** *Judge*.

Plaintiff, Linc Government Services, LLC ("Linc"), initiated this post-award bid protest on June 17, 2010, challenging the decision of the United States Army ("Army") to award to intervenor, McNeil Technologies, Inc. ("McNeil"), a contract for advisory support services in Iraq. On July 15, 2010, one day before the parties were to file their cross-motions for judgment on the administrative record, plaintiff moved to supplement the administrative record. Pl.'s Mot.

---

[*] This opinion originally issued under seal on October 21, 2010. The court afforded the parties an opportunity to propose redactions in the published opinion. Defendant and intervenor did not propose any redactions. Plaintiff proposed redacting only the names of its Chief Operating Officer and another of its employees. The court accepts plaintiff's proposed redactions: the names of both of plaintiff's employees are herein replaced with the notation, [name redacted].

to Suppl. Admin. R. (Pl.'s Mot.) at 1. In its motion, plaintiff argues that the proffered materials (described below) are necessary to the court's review of plaintiff's challenge to the Army's evaluation of offerors' past performance. *See id.* at 2–3. For the reasons detailed below, the court denies plaintiff's motion.

## I. BACKGROUND

The subject procurement began on October 30, 2009, when the Army issued Request for Proposals No. W52P1J-09-R-0079 (the "Solicitation" or "RFP"). Admin. R. ("AR") 2. The Solicitation specified three "evaluation factors" for the evaluation of proposals: technical, past performance, and price. AR 53. Under the past performance evaluation factor, the Solicitation required each offeror to submit information for up to three "recent and relevant" prior government contracts, and to designate a reference Point of Contact ("POC") for each of these contracts. AR 48. To each reference POC, the offeror was required to send a past performance questionnaire ("PPQ").[1] AR 48. The POC was instructed to complete the PPQ by rating various aspects of the offeror's performance under the referenced contract, AR 115, then to return the PPQ directly to the Army by the stated deadline,[2] AR 48. The Solicitation assigned to the offeror full responsibility for ensuring the Army's timely receipt of completed PPQs. AR 49, 55. And offerors were required to include in their proposals documentation indicating that they had sent the PPQs to their reference POCs. AR 48.

In conducting the past performance evaluation, the Army's source selection authority ("SSA") relied upon the completed PPQs as well as past performance information obtained from two other sources. AR 594. Specifically, the SSA conducted an Internet search, using the Google search engine, as well as a search of the Past Performance Information Retrieval System ("PPIRS"), a government-wide online database of performance assessment "Report Cards" for government contractors.[3] AR 594. In plaintiff's case, the administrative record shows that the Army did not receive any completed PPQs and that the SSA's PPIRS search returned no "assessment report cards." AR 598. The extra-record materials that plaintiff seeks to admit are aimed at rebutting this record evidence.

In particular, plaintiff first seeks the admission of email correspondence between one of plaintiff's employees and the POC for one of plaintiff's prior government contracts. Pl.'s Mot. at 2, Ex. A. Plaintiff argues that the email correspondence goes to "the true facts which actually transpired regarding the Government's reported non-receipt of Linc's PPQs." *Id.* at 2. Plaintiff also seeks admission of a table purportedly showing 70 assessment report cards returned by a PPIRS search that plaintiff conducted. *Id.* at 2–3, Ex. B. Plaintiff argues that this table establishes that the Army's "representations regarding the unavailability of PPIRS report cards cannot be trusted." *Id.* at 5. The court must assess the relevance of the materials that plaintiff has submitted in light of these stated purposes.

---

[1] The Army provided offerors with a blank PPQ as an attachment to the RFP. AR 114–18.
[2] The last page of the PPQ indicated a deadline of November 23, 2009 for receipt of completed PPQs. AR 118.
[3] PPIRS is a database of Report Cards and Statistical Reporting relating to past performance of government contractors. *See* http://www.ppirs.gov.

## II. DISCUSSION

As a general matter, the "parties' ability to supplement the administrative record is limited" in a bid protest. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). This is because the court must review the challenged agency decisions to determine whether they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (incorporated by 28 U.S.C. § 1491(b)(4)). In applying this highly deferential standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The purpose of this limited review is to prevent a court from converting the "arbitrary and capricious" standard of review into *de novo* review. *Axiom*, 564 F.3d at 1380 (citing *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)). Therefore, supplementation of the administrative record in a bid protest is "limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Id.*

To be sure, there is a distinction to be made between materials proffered to "supplement" or to "complete" the administrative record. A procuring agency's initial submission to the court may omit information that is properly part of the administrative record because it served as a basis for the agency's award decision. *See* R. Ct. Fed. Cl. App. C, ¶ 22(o) (including "supporting documentation" for an agency's decision among the "core documents" of the administrative record); *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 4 (2009) (explaining that "the contents of the administrative record cannot be wholly contingent"). In such instances, subsequent admission of the omitted information is appropriate not to supplement the record, but to complete it. *See, e.g.*, *Allied Tech. Group, Inc. v. United States*, 92 Fed. Cl. 226, 231 (2010); *Kerr Contractors, Inc. v. United States*, 89 Fed. Cl. 312, 334–35 (2009); *Ala. Aircraft Indus., Inc. – Birmingham v. United States*, 82 Fed. Cl. 757, 765 (2008); *Murakami*, 46 Fed. Cl. at 735 n.4.

Finally, when a plaintiff seeks to gain the admission of extra-record evidence in support of an allegation of bad faith, that allegation must be sufficiently well-grounded and based upon hard facts. *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347, 355 (2010); *Pitney Bowes Gov't Solutions, Inc. v. United States*, 2010 WL 2301188 at *4 (Fed. Cl. May 28, 2010). That is, a plaintiff "must first make a *threshold* showing of either a motivation . . . or conduct that is hard to explain absent bad faith." *Beta Analytics Int'l, Inc. v. United States*, 61 Fed. Cl. 223, 226 (2004) (emphasis added). With these principles in mind, the court carefully reviews the materials that plaintiff has proffered for admission.

*A. The Email Correspondence*

First, plaintiff proffers four emails between [name redacted], one of plaintiff's employees, and Captain Andrea Buckley, who was the designated POC for one of plaintiff's recent and relevant contracts. Pl.'s Mot. at 2. The first email, dated November 11, 2009, reveals that Ms. [name redacted] sent a blank PPQ to Captain Buckley and asked her to complete and return it to the Army. *Id.*, Ex. A at 2. In the second email, dated December 22, 2009, Ms. [name redacted] relayed to Captain Buckley that the Army had not yet received the latter's completed PPQ, and asked Captain Buckley if she could confirm her submission. *Id.*, Ex. A at 3. In the third email, dated February 22, 2010, Ms. [name redacted] asked Captain Buckley to resubmit a completed PPQ to the Army. *Id.*, Ex. A at 4. In the fourth and final email, also dated February

22, 2010, Captain Buckley replied: "I sent it again.  My first one must have not gotten through, though it was after the 23 Nov 09 deadline since I was in the process of deploying to Afghanistan."  *Id.*, Ex. A at 5.

Plaintiff does not allege that these emails were ever before the Army at the time of the award decision or that they were erroneously omitted from the administrative record filed with the court.  Therefore, these emails cannot be offered under a theory of "completing" the record.  *See* R. Ct. Fed. Cl. App. C, ¶ 22(o) (listing the "core documents" of the administrative record).  Rather, plaintiff must satisfy the stringent standard for supplementation of the record by demonstrating that omission of the emails would "preclude[] effective judicial review."  *Axiom*, 564 F.3d at 1380.

Plaintiff makes two arguments in support of its motion for admission of these emails.  First, plaintiff argues that the emails demonstrate that it "made both reasonable and timely efforts" to ensure submission of its completed PPQs.  Pl.'s Mot. at 2.  Yet none of the parties disputes plaintiff's diligence in attempting to ensure timely submission of the completed PPQs.  In fact, the record already includes substantial evidence of plaintiff's efforts in this regard, including a duplicate copy of one of the four emails at issue.  *See* AR 178–79, 182–83, 187–88.

Plaintiff otherwise maintains that its completed PPQs were indeed received by the Army and that the proffered emails thus demonstrate a "gap" in the record.  Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply") at 2–3.  The emails, however, are irrelevant to plaintiff's assertion that the Army did, in fact, receive Captain Buckley's completed PPQ.  At most, the emails demonstrate that Captain Buckley submitted, or attempted to submit, the completed PPQ.  As defendant correctly points out, however, submission is not the same as receipt.  Def.'s Resp. to Pl.'s Mot. ("Def.'s Resp.") at 5.  Indeed, the emails show that Captain Buckley's submission of the PPQ was untimely, further undercutting plaintiff's argument.  *See* Pl.'s Mot., Ex. A at 5 (Captain Buckley's email stating that she submitted the completed PPQ "after the 23 Nov 09 deadline").  Because the proffered emails duplicate evidence already in the record and otherwise fail to support the argument for which they are proffered, their omission would not preclude effective judicial review.  *See Axiom*, 564 F.3d at 1380.

### B. Purported PPIRS Search Results

Plaintiff also seeks the admission of a single page containing a table that purportedly lists 70 past performance report cards returned by plaintiff's own PPIRS search.  Pl.'s Mot., Ex. B.  Plaintiff argues that, "had the Government performed the specific [and more broad] search they represented they performed during their evaluation, the Government would have found the seventy (70) PPIRS assessment reports."  Pl.'s Reply at 7 (brackets in original); *see also* Pl.'s Mot. at 2–3, 5.  More pointedly, plaintiff claims that the proffered table "establishes that Government representations regarding the unavailability of PPIRS report cards cannot be trusted."  Pl.'s Mot. at 5.  In essence, plaintiff is offering this table as evidence of bad faith on the part of the Army.  *See id.* at 2–3, 5–6; Pl.'s Reply at 6–7.

As a general matter, because the Army undertook to conduct a PPIRS search as part of its past performance evaluation, evidence suggesting that the search was improperly conducted might be necessary to the court's review.  *See L-3 Commc'ns Integrated Sys., L.P. v. United*

*States*, 91 Fed. Cl. 347, 354 (2010); *Totolo/King v. United States*, 87 Fed. Cl. 680, 693 (2009); *Int'l Res. Recovery, Inc. v. United States*, 61 Fed. Cl. 38, 41–42 (2004). However, plaintiff has failed to provide a sufficient foundation or authentication for the proffered table. *See* Fed. R. Evid. 901 (requiring "evidence sufficient to support a finding that the matter in question is what its proponent claims").

The table, which purportedly lists 70 assessment report cards returned by plaintiff's PPIRS search, contains seven columns and seventy rows. Pl.'s Mot., Ex. B. In the first column, labeled "Contract Numbers," the same numbers appear multiple times, while others are similar with minor variations. *Id.* The remaining six columns are titled, respectively, Quality of Product, Schedule, Cost Control, Business Relations, Management of Key Personnel, and Average Rating for Evaluation. *Id.* For each "Contract Number" listed in the first column, each of the remaining six columns is either blank or shows a number between 2 and 5. *Id.* In turn, a small table at the bottom of the page appears to define a numerical scale, ranging from 1 to 5, with a score of "5" corresponding to "Exceptional/Outstanding" and a score of "1" corresponding to "Unsatisfactory." *Id.* That is all the information shown on the single page that plaintiff has submitted.

Plaintiff argues that the declaration of plaintiff's Chief Operating Officer, [name redacted], supplies the requisite authentication of this information. Pl.'s Reply at 5 (citing Am. Compl., Ex. E). Defendant and intervenor respond that Mr. [name redacted]'s declaration fails to provide such authentication because it does not "provide the basic what, when, and how that could explain exactly what the list is and how and when it was generated." Intervenor's Resp. to Pl.'s Mot. ("Intervenor's Resp.") at 5; *see also* Def.'s Resp. at 7 n.2. The court agrees.

In a single reference to PPIRS search results, Mr. [name redacted] states that "there were 70 Contractor Performance Assessment Reports (CPAR) on the Government PPIRS at the time." Am. Compl., Ex. E ¶ 12. However, Mr. [name redacted] makes no specific reference to the proffered table, nor is there any evidence that this table was in existence at the time of Mr. [name redacted]'s declaration. Beyond this, plaintiff has failed to provide any information on the contracts purportedly listed in the table, even after both defendant and intervenor challenged the table's authenticity, *see* Def.'s Resp. at 6, Intervenor's Resp. at 4–5. Instead, plaintiff simply responds: "these documents are in the Government's possession, under the control of the Government and readily available to the Government. Therefore, if this summary [of the purported PPIRS search results] was in any way inaccurate, the Government has the access and resources to note this fact." Pl.'s Reply at 6.

However, it is plaintiff's burden—not defendant's— to authenticate and demonstrate the meaning and relevance of its proffered extra-record evidence. Without additional information—information that plaintiff has expressly declined to provide, *see id.*—the court cannot determine what the proffered table shows and which, if any, of the listed contracts are "recent and relevant" as the Solicitation defined those terms, *see* AR 48. An isolated conclusory reference in Mr. [name redacted]'s declaration does not answer any of these questions and does not otherwise demonstrate that the proffered table is what plaintiff claims it to be.

Finally, to the extent that plaintiff seeks to demonstrate bad faith on part of the Army, gaining admission of this extra-record evidence requires "a *threshold* showing of either a

motivation . . . or conduct that is hard to explain absent bad faith." *Beta Analytics Int'l*, 61 Fed. Cl. at 226 (emphasis added). Plaintiff has failed to make such a showing. Indeed, plaintiff has offered nothing to suggest bias or bad faith on the Army's part, save its own conclusory assertions.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to supplement the administrative record is DENIED.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*

Lawrence J. Block
Judge